UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | | |
|---|---|---|
| MICHAEL MAHAFFEY, | ) | |
| | ) | |
| Plaintiff, | ) | 3:05-cv-222 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | [Re:  Motion at docket 21] |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## I. MOTION PRESENTED

At docket 21, plaintiff's attorney Robert Friedman asked the court to authorize an award of attorney's fees in the amount of $33,250.75 for his representation of Michael Mahaffey. The Commissioner responded at docket 23, and plaintiff's attorney replied at docket 26. Oral argument was not requested and would not assist the court.

## II. DISCUSSION

Plaintiff Michael Mahaffey commenced a civil action in this court for Social Security disability benefits after an administrative law judge denied his claim for benefits

and the decision became final.[1]  This court's April 10, 2006 judgment reversed and remanded for further administrative proceedings pursuant to 42 U.S.C. § 405(g), after written briefing which included a joint motion to remand (stipulation).[2]  On February 16, 2007, an ALJ issued a decision finding Mr. Mahaffey disabled with an onset date of December 20, 2001.[3]  In the pending motion for fees plaintiff's counsel, Robert Friedman, initially sought authorization for a total award of $33,250.75, which is somewhat less than 25% of the total past-due benefits as calculated by Friedman.

> Section 406 (b)(1)(A) of Title 42 of the United States Code provides as follows:
>
> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Commissioner of Social Security may, notwithstanding the provisions of section 405(I) of this title, but subject to subsection (d) of this section, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

The Commissioner argues that Friedman's requested fee should be reduced because (1) it is based on an erroneous calculation of the total past-due benefits, and (2) it is unreasonable.[4]

Friedman has agreed with the Commissioner that the amount of past due

---

[1] Doc. 22 at 3.

[2] *Id.*

[3] Doc. 22 at 3.

[4] Doc. 23.

benefits owed to Mr. Mahaffey and beneficiaries is $154,139.00 for the period June 2002 to April 2007,[5] but the parties disagree on the time period to be used for purposes of calculating attorney's fees. While both agree that June 2002 is the date the past due benefit calculation begins, they differ on when it ends. Friedman says it ends in April 2007, the date the Commissioner contemplated for calculation of past-due benefits in his award letter.[6] The Commissioner contends that for purposes of calculating the attorney's fees, the end date is March 2006, the month before this court's decision remanding for further proceedings. Using that end date yields a total award of past due benefits in the amount of $118,108.[7]

The Commissioner cites the SSA's Programs Operations Manual to support his position on the end date. The Manual is not binding on the court, and the section cited does not offer entirely clear support for the Commissioner's position. Section 03920.060(B)(1)[8] of the Manual does say that the definition of past-due benefits in a court level case "ends the month before the month of the court's judgment."[9] However, this section does not specifically state that this is the case where the judgment is one which may require significant further proceedings on remand.

For his part, Friedman argues that he has previously been awarded fees based on

---

[5] Doc. 26 at 2.

[6] A copy of the award letter is attached to the motion at doc. 21 and is tracked on ECF as doc. 21-5.

[7] Doc. 23 at 3.

[8] POMS GN 03920.060(B)(1).

[9] Doc. 26 at 5 (citing POMS GN 02920.06-(B)(1).

calculations similar to those he advances here. Friedman offers no citation to any of the "approximately 20 cases" where he alleges this has occurred.[10]

Based on a straightforward application of the statute, the court concludes that in the case at bar "past due benefits" for purposes of Section 406(b) should be calculated using the end date urged by Friedman. The plain language of Section 406(b)(1)(A) states that where a court renders a "favorable" judgment a court may "determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment."[11]   Congress' use of the phrase "total past-due benefits" indicates that the amount for purposes of attorneys fees calculations is just that- the "*total* past-due benefits." Moreover, the total amount awarded did result from the judgment. Without the judgment, there would have been no award. Admittedly this approach could provide a windfall for a plaintiff's attorney's where, as here, a long delay occurs between the district court's remand and final agency action and the Commissioner has made a substantial award for work before the administrative agency. However, this concern may be taken into account in the court's analysis of the reasonableness of the attorney's fee award.

In *Gisbrecht v. Barnhart,*[12] the Supreme Court held that the evaluation of an award of attorney's fees in a social security case wherein the claimant and his attorney have entered a contingent fee agreement is not to be accomplished with reference to the

---

[10]Doc. 26 at 7.

[11]42 U.S.C. § 405(b)(1)(A).

[12]535 U.S. 789 (2002).

familiar "lodestar" principle applicable in cases where one party's attorney's fees are shifted to another party. The court explained that 42 U.S.C. § 406(b) is not a fee shifting statute; rather it contemplates a reduction in the claimant's recovery to pay the fee.[13] The Court explained that the reasonableness of an agreement within the 25% boundary set by Section 406(b) depends on the "character of the representation and the results the representation achieved."[14] The court may look to such factors as whether an attorney was responsible for a delay and if "benefits are large in comparison to the amount of time counsel spent on the case."[15] In a reasonableness analysis, the court may require as an aid to assessment the record of hours expended and the lawyer's normal hourly billing rate.[16]

Here there is no basis for concluding that Friedman is responsible for any delay in the proceeding. However, the benefits to his client exceeded $150,000 which is rather large when compared to the total of 22.6 hours expended on the representation in this court prior to the remand. The hourly rate used in connection with the earlier motion for fees pursuant to the Equal Access To Justice Act was $161.25, a rate based on the statutory maximum of $125 per hour[17] adjusted for increases in the cost of living between

---

[13] *Id.* at 802.

[14] *Id.* at 808.

[15] *Id.*

[16] *Id.*

[17] 28 U.S.C. § 2412(d)(2)(A)(ii).

the effective date of the statute and the award.[18]  The court finds a rate of $161 for a lawyer like Friedman who has more than 25 years of experience to be substantially below the market rate.  Friedman has presented information which supports the proposition that a lawyer with his many years of experience might be expected to charge substantially more than $300 an hour based on national data.  However, the court knows from its experience sitting in numerous diversity cases governed by Alaska law which has a fee shifting rule in civil cases that an hourly rate significantly above $300 is rare.  An hourly rate of $300 would be reasonable for non-contingency work.  For 22.6 hours of work at $300, Friedman would have been paid $6,780.  Of course, in a contingent fee case this factor is merely a reference point to be considered along with all of the other factors which might bear on the reasonableness of the compensation sought.

    Friedman urges the court to consider that based on his research only about 35% of the social security cases which go to court wind up with a payment of benefits.  Using that figure, he argues that a multiplier of 2.86[19] should be applied to an actual hourly fee calculation as one factor used to assess whether a contingent fee is reasonable.  The United States has not disputed the accuracy of the multiplier, but points out that at $300 an hour it would support a fee of only $19,390.[20]  Of course, the multiplier (assuming it is accurately calculated) would apply neatly only to an "average" or typical case.  Friedman argues that this case is one that had more downside risk than many.  This court is also

---

[18]Doc. 19 at 3.

[19]Doc. 22 at 11.

[20]Doc. 23 at 6.

mindful that the Supreme Court has eschewed the application of a lodestar approach which this court believes warrants caution in reliance on what amounts to a lodestar with multiplier approach.

When the court looks at the overall fairness to the claimant and the lawyer in light of all of the above, it concludes that a total fee of $28,000 for work in this court is warranted. It may be noted that after payment of the $3,644 EAJA fee to Mahaffey, a $28,000 award will leave Friedman with $24,356. The court considers that sum to be reasonable compensation on a contingency fee basis.

DATED at Anchorage, Alaska this 10th day of December 2007.

/s/
John W. Sedwick
United States District Judge